**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UBISOFT ENTERTAINMENT AND UBISOFT, INC., <br>            Plaintiffs, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, <br><br>            Defendants. | Civil Action No. 26-cv-04494 |

## COMPLAINT

Ubisoft Entertainment and Ubisoft, Inc. (collectively "Plaintiffs" or "UBISOFT"), by and through its undersigned counsel, hereby file this Complaint against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations identified on Schedule A hereto (collectively, "Defendants") and allege as follows:

### I.    Jurisdiction And Venue

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., the Copyright Act, 17 U.S.C. § 101, *et seq*., 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a)-(b).

2.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(a), and this Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2) since each of the Defendants directly targets consumers in the United States, including New York, through at least the fully interactive commercial internet stores

1

operating under the Defendant aliases and/or the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Seller Aliases").

3.　　This Court may exercise personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A), which permits service under New York's long-arm statute, C.P.L.R. §§ 302(a)(1) and 302(a)(3)(i) and (ii), or alternatively pursuant to Fed. R. Civ. P. 4(k)(2), because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District, derive substantial revenue from business transactions in New York and in this Judicial District, and otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants comports with due process and does not offend traditional notions of fair play and substantial justice.

4.　　In addition, Defendants' illegal counterfeiting and infringement actions caused injury to Plaintiffs in New York and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in New York and this Judicial District.

5.　　For example, Defendant Internet Stores offer for sale and accept orders for their counterfeit products from, and offer to ship such counterfeit products to, New York addresses located within this Judicial District.

[REMOVED FROM PUBLIC DOCKET]

6.　　Moreover, upon information and belief, Defendants are systematically directing and targeting their business activities at consumers in the U.S., including those in New York and in this Judicial District by, among other things, accepting payment through accounts with online marketplace payment processing platforms such as PayPal and Shop Pay (the "User Account(s)"), as well as any and all as yet undiscovered User Accounts with additional online marketplace

2

platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them, through which consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, communicate with Defendants regarding their listings for counterfeit products, and place orders for, receive invoices for, and purchase counterfeit products for delivery in the U.S., including New York (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and more particularly, in this Judicial District).

II.    **Parties**

7.    Plaintiff Ubisoft Entertainment is a leading French video game developer and publisher with its principal place of business and headquarters at 2 rue du Chene Heleuc, Carentoir, 56910, France. Ubisoft Entertainment is the parent company of Ubisoft Inc., a California corporation with a registered address at 300 Mission Street, 20th Floor, San Francisco, California 94105.

8.    UBISOFT is engaged in the business of developing, marketing, promoting, selling, and distributing products under the Plaintiffs' ASSASSIN'S CREED brand, marks, and related intellectual property.  The ASSASSIN'S CREED franchise is a well-known multimedia franchise centered on the trademarked video game series of the same name developed by Plaintiffs. The first game in the series, ASSASSIN'S CREED, was released in 2007. Since that time, the franchise has grown into one of the best-selling video game franchises in the world, with numerous game titles sold worldwide. In addition to video games, Plaintiffs have expanded the ASSASSIN'S CREED brand into a variety of related goods and media, including motion pictures, novels, comic books,

3

toys, apparel, and other merchandise (hereinafter referred to as the "ASSASSIN'S CREED Products").

https://ubisoftgearshop.com/collections/new-arrivals



9.      This action has been filed to combat online trademark and copyright infringers who trade upon Plaintiffs' reputation and goodwill and valuable intellectual property by selling and/or offering for sale unauthorized, counterfeit and infringing versions of the ASSASSIN'S CREED Products (hereafter, the "Infringing Products") in violation of Plaintiffs' federally registered trademarks and copyrighted works.

10.     Plaintiff Ubisoft Entertainment is the current registered owner of numerous trademark registrations, including U.S. Trademark Registration Nos. 5,300,715 and 4,704,227,, which are at issue in this dispute (the "ASSASSIN'S CREED Marks").

| Trademark | Registration Number | Goods and Services Covered |
|---|---|---|
| ASSASSIN'S CREED | 5,300,715 | Costumes for use in role-playing games; costumes for use in children's dress up play; Halloween costumes; Masquerade costumes in Class 25 |
| ASSASSIN'S CREED | 4,704,227 | Clothing, namely, headwear; belts; bottoms; coats; jackets; loungewear; shirts; sweaters; sweatshirts; tops; hats; caps in Class 25 |

11. The ASSASSIN'S CREED Marks registrations are valid, subsisting, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. The registrations constitute prima facie evidence of validity and of Plaintiffs' exclusive right to use the ASSASSIN'S CREED Marks in commerce and otherwise pursuant to 15 U.S.C. § 1057(b).

12. True and correct copies of the registration certificates for the ASSASSIN'S CREED Marks are attached as Exhibit 1.

13. In addition, Ubisoft Entertainment is the current owner and Claimant of the following Copyright Registration Nos. PA 1-595-842, PA 1-952-351, PA 1-843-135, PA 1-726-395, PA 1-981-987, PA 1-812-598, PA 1-886-998, PA 2-169-839, PA 2-097-643 (collectively the "ASSASSIN'S CREED Works").

| Copyright Title | Copyright Registration | Copyrighted Work |
|---|---|---|
| Assassin's Creed PS3 | PA 1-595-842 | |
| Assassin's Creed Unity | PA 1-952-351 | |

| | | |
|---|---|---|
| Assassin's Creed III | PA 1-843-135 | |
| Assassin's Creed II XBOX 360 | PA 1-726-395 | |

| | | |
|---|---|---|
| Assassin's Creed Syndicate | PA 1-981-987 |  |
| Assassin's Creed Revelations PS3 | PA 1-812-598 | |

| | | |
|---|---|---|
| | |  |
| Assassin's Creed IV Black Flag | PA 1-886-998 | |

| | | |
|---|---|---|
| Assassin's Creed Odyssey | PA 2-169-839 |  |
| Assassin's Creed Origins | PA 2-097-643 | |

14.     True and correct copies of the registration certificates for the ASSASSIN'S CREED Works are attached as Exhibit 2.

15.     The ASSASSIN'S CREED Marks and ASSASSIN'S CREED Works have been the subject of substantial and continuous marketing and promotion by Plaintiffs.  Plaintiffs have and continue to market and promote the ASSASSIN'S CREED Marks and ASSASSIN'S CREED Works widely in the industry and to consumers.  Plaintiffs' promotional efforts include — by way of example, but not limitation — substantial print media, the ASSASSIN'S CREED website and social media sites, and point of sale materials.

16.     The ASSASSIN'S CREED Marks have been continuously used and have never been abandoned. The ASSASSIN'S CREED trademark and copyright registrations are valid, subsisting, and in full force and effect.

17.     Plaintiffs have invested substantial time, money, and effort in building up, developing, advertising, and otherwise promoting the ASSASSIN'S CREED Marks and ASSASSIN'S CREED Works. As a result, products associated with the ASSASSIN'S CREED Marks and ASSASSIN'S CREED Works are recognized and exclusively associated by consumers, the trade, and the public as being authentic products originating from Plaintiffs.

18.     Plaintiffs have made efforts to protect their interests in and to the ASSASSIN'S CREED Marks and ASSASSIN'S CREED Works. No one other than Plaintiff and its expressly authorized licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the ASSASSIN'S CREED Marks or ASSASSIN'S CREED Works without the express written permission of Plaintiffs.

19.     Defendants are individuals and business entities who, upon information and belief, reside in various foreign jurisdictions. Defendants conduct business throughout the United States,

including within New York and in this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Seller Aliases. Each Defendant targets the United States, including New York, and has offered to sell and, on information and belief, has sold and continues to sell unauthorized and Infringing Products to consumers within the United States, including New York and in this Judicial District.

III.    **Factual Background**

20.        Prior to the proliferation of anonymous online marketplaces, Plaintiffs successfully enforced their intellectual property rights against identifiable infringers and counterfeiters through traditional legal channels. The rise of online retailing, coupled with the ability of e-commerce sites to conceal their identities, has made it nearly impossible for effective enforcement actions to be undertaken since availing itself of takedown procedures to remove Infringing Products would be futile and commercially unreasonable given the sophisticated and coordinated mass counterfeiting operation that is occurring over the Internet. The aggregated effect of the mass counterfeiting that is taking place has overwhelmed Plaintiffs and their ability to police and enforce its rights against the hundreds of anonymous defendants that are selling illegal counterfeit Infringing Products at prices below the cost of an original, authentic ASSASSIN'S CREED Product:

**PLAINTIFFS' OFFICIALLY LICENSED PRODUCT**



Assassin's Creed Shadows Yasuke Naoe
Dynamic Art Hoodie Licensed

$75.95 USD

**COUNTERFEIT/INFRINGING LISTINGS**

[REMOVED FROM PUBLIC DOCKET]

21.    The above examples evidence a cooperative counterfeiting network using fake e-commerce storefronts designed to appear to be selling authorized ASSASSIN'S CREED Products.

22.    In an effort to illegally profit from the mass popularity of Plaintiffs' ASSASSIN'S CREED brand and the creative content of the ASSASSIN'S CREED Marks and ASSASSIN'S CREED Works, Defendants have created numerous Seller Aliases and have intentionally designed them to appear to be selling authentic ASSASSIN'S CREED Products when in fact they are selling inferior imitations and/or unauthorized counterfeits.

23.    Plaintiffs have suffered and will continue to suffer immediate and irreparable harm through loss of control over Plaintiffs' valuable intellectual property, diminution of reputation and goodwill, loss of quality control, and impairment of licensing relationships and opportunities, for which there is no adequate remedy at law, thereby necessitating both immediate injunctive relief and monetary damages.

24.    The systematic and coordinated mass counterfeiting and infringement campaign has caused, and continues to cause, substantial and irreparable harm to Plaintiffs and severely undermine Plaintiffs' ability to police and effectively enforce its rights against the hundreds and thousands of anonymous online sellers who are selling counterfeit Infringing Products.

25.    To be able to offer the Infringing Products at a price substantially below the cost of authentic originals, while still being able to turn a profit after absorbing the cost of manufacturing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain. As a 2020 Homeland Security report confirms, infringers act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate brand owners while generating huge profits for the illegal pirating network.[1]

26.    The Seller Aliases share distinctive identifying characteristics and patterns, including identical design elements and similarities in the unauthorized products offered for sale, establishing a coordinated network of related operations arising from the same series of transactions or occurrences. Defendants deliberately employ sophisticated technological means and aliases to evade detection and liability by systematically concealing their true identities and

---

[1] *See* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods*, Jan. 24, 2020, (https://www.dhs.gov/publication/combating-trafficking-counterfeit-and-pirated-goods), at 10, 19.

the full scope and interworking of their illegal network. Despite deterrents such as takedowns and other measures, the use of aliases enables infringers to stymie authorities. *Id.* at 5, 11, 12.

27. In a 2024 report by the Office of the United States Trade Representative (USTR) titled *2024 Review of Notorious Markets for Counterfeiting and Piracy*, counterfeit and pirated goods from China (including trans-shipments via Hong Kong) accounted for 84% of the value and 90% of the total quantity of counterfeit and pirated goods seized by U.S. Customs and Border Protection (CBP) in 2023. The report notes that in prior years, online piracy cost the U.S. economy an estimated $29.2 billion in lost revenue. The report also highlights how e-commerce and social media platforms facilitate counterfeit sales via online seller listings, influencer promotion, links to fake sites, and social media driven traffic.[2]

28. Plaintiffs' investigation reveals the telltale signs of an illegal counterfeiting and infringement scheme are present in the instant action. For example, Schedule A shows the use of store names by the Seller Aliases that employ abnormal business nomenclature and, instead, have the appearance of being made up, or if a company that appears to be legitimate is used, online research shows that there is no known address for the company. Thus, the Seller Aliases are deliberately operating deceptive online storefronts specifically designed to mislead consumers by appearing to sell genuine ASSASSIN'S CREED Products, while knowingly selling Infringing Products that are unauthorized, inferior counterfeit imitations of Plaintiffs' ASSASSIN'S CREED Products that illegally utilize the ASSASSIN'S CREED Marks and ASSASSIN'S CREED Works without Plaintiffs' consent or permission.

---

[2] *See 2024 Review of Notorious Markets for Counterfeiting and Piracy*, 89 Fed. Reg. 66,754 (USTR Docket No. 2024-0013) (Oct. 2, 2024). 2024 Review of Notorious Markets for Counterfeiting and Piracy | U.S. Chamber of Commerce

29.     Screenshot evidence showing each Defendant on Schedule A selling Infringing Products is attached as Exhibit 3.

30.     The Seller Aliases also share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them, and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting and infringement operations.

31.     The Infringing Products for sale through the Seller Aliases bear similarities and indicia of being related to one another, demonstrating that the Infringing Products were manufactured by and sourced from a coordinated network, and that, upon information and belief supported by substantial evidence, Defendants constitute an organized group of infringers operating in deliberate concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products.

32.     The Seller Aliases intentionally conceal Defendants' identities and the full scope of their counterfeiting and infringement operations in an effort to deter Plaintiffs from learning Defendants' true identities and the exact interworking of Defendants' illegal operations. Defendants go to great lengths to conceal their identities by often using multiple fictitious names and addresses to register and operate their massive network of Seller Aliases.

33.     Upon information and belief, Defendants regularly create new websites and online marketplace storefront accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses. Use of such Seller Alias registration patterns

16

is one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their massive infringement operation and to avoid being shut down.

34.  In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases involving online infringers systematically employ a variety of sophisticated tactics specifically designed to evade detection and circumvent intellectual property enforcement efforts. For example, infringers like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. Infringers also deliberately structure their shipments in small quantities via international mail as part of a calculated strategy to evade detection and enforcement by U.S. Customs and Border Protection, demonstrating their awareness of and intent to circumvent legal restrictions.

35.  A 2024 U.S. Customs and Border Protection report on seizure statistics indicated that the vast majority of Intellectual Property Rights (IPR) seizures continue to take place within the express consignment and mail shipping methods and in 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics* FY 2024 at 2.[3]

36.  Further, infringers such as Defendants deliberately maintain a complex network of multiple credit card merchant accounts and third-party payment processing accounts, including PayPal accounts, that are strategically concealed behind layers of payment gateways, and that are specifically designed to evade detection and allow Defendants to continue their infringing operations despite Plaintiffs' legitimate enforcement efforts.

---

[3] *See* U.S. Customs & Border Protection, FY 2024 IPR Seizure Statistics, (Jan. 16, 2025). FY 2024 IPR Seizure Statistics | U.S. Customs and Border Protection

37.    Upon information and belief, Defendants systematically maintain offshore bank accounts and deliberately transfer funds from their PayPal and other similar accounts to these offshore accounts outside the jurisdiction of this Court, demonstrating a calculated scheme to shield their illicit profits from legal enforcement and recovery.

38.    Defendants, without any authorization or license from Plaintiffs, have knowingly, willfully, and deliberately counterfeited Plaintiffs' ASSASSIN'S CREED Marks and infringed Plaintiffs' ASSASSIN'S CREED Works in connection with the systematic advertisement, distribution, offering for sale, and sale of Infringing Products into the United States, including within this Judicial District of New York, over the Internet. Each Seller Alias offers shipping to the United States, including New York, and, on information and belief, each Defendant has offered to sell Infringing Products into the United States, including New York.

### <u>Count I - Trademark Infringement and Counterfeiting</u>
**(15 U.S.C. § 1114)**

39.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

40.    This is a trademark infringement action against certain Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered ASSASSIN'S CREED Marks in connection with the sale, offering for sale, distribution, and/or advertising of Infringing Products. The ASSASSIN'S CREED Marks are distinctive. Due to Plaintiffs' substantial and continuous investment in quality control, brand management, and product development, consumers have come to expect, rely upon, and associate the highest quality exclusively with Plaintiffs and authentic ASSASSIN'S CREED Products offered, sold, or marketed under the ASSASSIN'S CREED Marks.

41.     Without Plaintiffs' authorization or consent, with knowledge of Plaintiffs' well-known and prior rights in its ASSASSIN'S CREED Marks and with knowledge that Defendants' Infringing Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the ASSASSIN'S CREED Marks and used spurious designations that are identical with, or substantially indistinguishable from, the ASSASSIN'S CREED Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Infringing Products.

42.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold their Infringing Products to the purchasing public in direct competition with Plaintiffs, in or affecting interstate commerce, and/or have acted with willful and reckless disregard of Plaintiffs' exclusive rights in and to the ASSASSIN'S CREED Marks through Defendants' systematic and deliberate participation in such unlawful activities.

43.     Defendants have applied their reproductions, counterfeits, copies, and colorable imitations of the ASSASSIN'S CREED Marks to packaging, point-of-purchase materials, promotions, and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling of Defendants' Infringing Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Infringing Products, and is likely to deceive consumers, the public and the trade into believing that the Infringing Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which they are not entitled in law or equity.

19

44.     Defendants' unauthorized use of the ASSASSIN'S CREED Marks on or in connection with the Infringing Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs, and with deliberate intent to unfairly benefit from and damage the substantial and incalculable goodwill Plaintiffs have developed in the ASSASSIN'S CREED Marks through years of quality control and significant investment.

45.     Defendants' actions constitute willful counterfeiting of the ASSASSIN'S CREED Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), thus entitling Plaintiffs to relief pursuant to § 1116(d), and §§ 1117(a)-(c).

46.     Defendants' continued, knowing, and willful use of the ASSASSIN'S CREED Marks without Plaintiffs' consent or authorization constitutes intentional infringement of the ASSASSIN'S CREED Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

47.     Plaintiffs have no adequate remedy at law, and if Defendants' actions are not immediately enjoined, Plaintiffs will continue to suffer immediate and irreparable harm to its reputation, market position, and the substantial goodwill associated with the ASSASSIN'S CREED Marks, for which there is no adequate remedy at law.

48.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit ASSASSIN'S CREED Products.

## Count II - False Designation of Origin, Passing Off & Unfair Competition
### (15 U.S.C. § 1125(a)/LANHAM ACT § 43(a))

49.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

50.     Defendants' promotion, marketing, offering for sale, and sale of Infringing Products has created and is creating a likelihood of confusion, mistake, and deception among the

public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Infringing Products by Plaintiffs.

51.    By using the ASSASSIN'S CREED Marks in connection with the sale of unauthorized Infringing Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the unauthorized Infringing Products.

52.    Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the unauthorized products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

53.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake, and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiffs, its ASSASSIN'S CREED Products, and ASSASSIN'S CREED Marks.

54.    Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

### Count III - Copyright Infringement
### (17 U.S.C. § 501(a))

55.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

56.    Plaintiffs' copyrighted ASSASSIN'S CREED Works have significant value and have been produced and created at considerable expense.

57.    Plaintiffs, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted ASSASSIN'S CREED Works, including derivative works.

58.    Upon information and belief, Defendants had direct access to and knowledge of the copyrighted ASSASSIN'S CREED Works through their widespread commercial availability in the marketplace, Plaintiffs' extensive marketing and promotion, and through Plaintiffs' normal business activities. After accessing the ASSASSIN'S CREED Works, Defendants willfully and knowingly created unauthorized copies of and/or derivative works derived from the copyrighted ASSASSIN'S CREED Works without Plaintiffs' consent and engaged in systematic and widespread acts of infringement.

59.    Plaintiffs are informed and believe and thereon allege that Defendants further infringed Plaintiffs' copyrighted ASSASSIN'S CREED Works by making or causing to be made derivative works and by producing and distributing such reproductions without Plaintiffs' permission.

60.    Each Defendant, without the permission or consent of the Plaintiffs, have and continues to sell online infringing copies and derivative works of the ASSASSIN'S CREED Works. Each Defendant has violated Plaintiffs' exclusive rights of reproduction and distribution. Each Defendant's actions constitute an infringement of Plaintiffs' exclusive rights protected under the Copyright Act (17 U.S.C. § 101 *et seq.*).

61.    Further, as a direct and proximate result of their respective and collective acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted ASSASSIN'S CREED Works. Plaintiffs are entitled to full disgorgement of all of Defendants' profits directly and indirectly attributable to their infringement of the ASSASSIN'S CREED Works, including any profits from related merchandise and derivative works, pursuant to 17 U.S.C. § 504(b).

62.    The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of the Plaintiffs.

63.    As a result of each Defendant's infringement of Plaintiffs' exclusive rights under applicable copyright statute, Plaintiffs are entitled to relief pursuant to 17 U.S.C. § 504.

64.    The conduct of each Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause, Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiffs are entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiffs' copyrights including without limitation the ASSASSIN'S CREED Works, and ordering that each Defendant destroy all unauthorized copies. Defendants' copies, plates, and other embodiment of the copyrighted works from which copies can be reproduced should be impounded and forfeited to Plaintiffs as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiffs pursuant to 17 U.S.C. § 503.

## IV.    **Prayer For Relief**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1)    That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a.  using the ASSASSIN'S CREED Marks and ASSASSIN'S CREED Works or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is

23

not an authorized ASSASSIN'S CREED Product or is not authorized by Plaintiffs to be sold in connection with the ASSASSIN'S CREED Marks and/or ASSASSIN'S CREED Works;

b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiffs and not approved by Plaintiffs for sale under the ASSASSIN'S CREED Marks and ASSASSIN'S CREED Works;

c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit and Infringing Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d. further infringing the ASSASSIN'S CREED Marks and ASSASSIN'S CREED Works and damaging Plaintiffs' goodwill;

e. otherwise competing unfairly with Plaintiffs in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, Infringing Products or related products or inventory not authorized by Plaintiffs to be sold or offered for sale, and which bear the ASSASSIN'S CREED Marks or which are derived from Plaintiffs' ASSASSIN'S CREED Works;

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Seller Aliases, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiffs which bear the ASSASSIN'S CREED Marks or which are derived from Plaintiffs' ASSASSIN'S CREED Works;

24

2)      That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which Defendants have complied with all aspects of the injunctive relief ordered by this Court;

3)      Entry of an Order that, upon Plaintiffs' request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Seller Aliases, and online marketplace account registrars, shall:

   a. disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products or related products not authorized by Plaintiffs, which bear the ASSASSIN'S CREED Marks, or which are derived from the ASSASSIN'S CREED Works, including but not limited to any accounts associated with the Defendants listed on Schedule A and any affiliated, related, or successor accounts;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Infringing Products or related products not authorized by Plaintiffs, which bear the ASSASSIN'S CREED Marks, or which are derived from Plaintiffs' copyrighted ASSASSIN'S CREED Works; and

   c. take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4)      That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' willful and unlawful acts herein alleged, and that the amount of damages

25

for infringement be trebled pursuant to 15 U.S.C. § 1117(b) due to the exceptional nature of this case and Defendants' willful infringement;

5)  In the alternative, that Plaintiffs be awarded statutory damages up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as provided by 15 U.S.C. § 1117(c)(2);

6)  For Judgment in favor of Plaintiffs against Defendants that they have:

   a.  willfully infringed Plaintiffs' rights in its federally registered copyrights pursuant to 17 U.S.C. § 501; and

   b.  otherwise injured Plaintiffs' business reputation and goodwill by Defendants' acts and conduct set forth in this Complaint;

7)  For Judgment in favor of Plaintiffs against Defendants for actual damages and lost profits or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiffs, in an amount to be determined at trial;

8)  That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

9)  Award such other and further relief, including temporary, preliminary and permanent injunctive relief, as this Court may deem just and proper under the circumstances and as allowed by law.


Dated: May 28, 2026                      Respectfully submitted,

                                         /s/ Shengmao Mu
                                         Shengmao Mu
                                         NY No. 5707021
                                         **WHITEWOOD LAW PLLC**
                                         57 West, 57th Street, 3rd and 4th Floors
                                         New York, NY, 10019
                                         Telephone: (917) 858-8018
                                         Email: smu@whitewoodlaw.com

26

*Counsel for Plaintiffs*

**Schedule A**

[REMOVED FROM PUBLIC DOCKET]